# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **KELLY SANDERS,** | : |
| Plaintiff, | : |
| v. | : Civil Action No. 7:08-cv-126(HL) |
| **TOM VILSACK[1], SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE,** | : |
| Defendant. | : |

## ORDER

Currently before the Court is the Motion to Dismiss filed by Defendant Ed Schafer, Secretary of the United States Department of Agriculture ("USDA") (Doc. 3)[2]. Through this Motion, Defendant seeks dismissal of Plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6). Having given full consideration to the parties' briefs and the applicable law, and for the reasons more fully set out below, Defendant's Motion is granted in part and denied in part.

---

[1] The Complaint named Chuck Connors, former Acting Secretary of Agriculture, as the party defendant. The Court now substitutes Tom Vilsack, the current Secretary, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] When the pending Motion to Dismiss was filed on November 28, 2008, Ed Schafer was serving as the Secretary of the USDA. On January 21, 2009, Tom Vilsack was sworn in as the 30th Secretary of the USDA. The case caption now reflects this change.

**I.    BACKGROUND**

Plaintiff Kelly Sanders is a female commercial squash farmer in Brooks County, Georgia. In her Complaint, Plaintiff alleges that she has been discriminated against by Defendant on the basis of her sex in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691-1691f, and Title VII of the Civil Rights Act, as amended. These claims arise out of Plaintiff's requests for loans and other relief from the USDA's Farm Service Agency ("FSA").

**II.   FACTS**

The following factual allegations are derived from the Complaint, the exhibits to the Complaint, and Defendant's Motion to Dismiss. The facts are viewed in the light most favorable to Plaintiff.

On February 10, 2004, Plaintiff received notification from the FSA that it had approved an $80,000 operating loan for annual production expenses on her squash crop for the 2004 crop year. Plaintiff signed a promissory note dated March 1, 2004, under which she was obligated to repay the principal and interest in one installment on January 1, 2005. Her squash crop was pledged as collateral. The loan was disbursed in two installments, with $50,000 paid to Plaintiff on March 1, 2004 and $30,000 paid on April 5, 2004.

After the loan proceeds were paid out, FSA employees began making visits to Plaintiff's farm to inspect the squash crop. The crop was planted late, and the

entire projected acreage was not planted because of adverse weather. In addition, part of the crop was damaged by high winds. Plaintiff was asked to provide monthly cash flow statements to the FSA for review, but she did not because the crop was still in the field and no income had been generated. The FSA believed that the farm operation was a failure case because Plaintiff had too much money invested in the crops and provided little hands-on management of the operation.

Plaintiff eventually realized that because of the adverse weather and its effect on the farming operation, she would not be able to make the January 1, 2005 payment on the operating loan. Plaintiff submitted a complete Primary Loan Servicing Application to the FSA on January 13, 2005. On that same day, Plaintiff also submitted a Request for Direct Loan Assistance, in which she requested a new operating loan in the amount of $36,000.

On March 4, 2005, the FSA denied Plaintiff's loan assistance request. The FSA determined that Plaintiff did not have sufficient experience in managing and operating a farm, which to the FSA meant that she did not have the managerial ability necessary to assure reasonable prospects of success in the proposed plan of operation. According to the FSA, this lack of managerial ability was shown in Plaintiff's failure to repay the $80,000 operating loan, use of loan funds in an unauthorized manner, failure to submit monthly cash flow statements, and failure to participate in supervisory/management meetings and farm visits with FSA employees. Plaintiff filed a request for reconsideration of this decision, and a

hearing before the FSA was held. In a letter dated March 17, 2005, Plaintiff was informed that the denial of the $36,000 operating loan had been upheld. This decision was appealed to the USDA National Appeals Division ("NAD"). On July 25, 2005, the NAD issued an appeal determination upholding the FSA's decision to deny Plaintiff's loan request.

Plaintiff's Primary Loan Servicing Application was also denied by the FSA on March 17, 2005. After that decision was made, Dean Lewis, an FSA Farm Loan Specialist, sent an email to Woodrow Clemons and P.L. Jowers, both FSA employees, stating that the FSA would not seek an opinion from the Office of General Counsel on the denial of the loan servicing application. Mr. Lewis notified the recipients that at a hearing on the matter, they would have to "do an excellent job explaining" why Plaintiff did not meet the definition of good faith and why no general counsel opinion was obtained. The email ended with a directive to Mr. Clemons to "give [Mr. Lewis] a call" before any hearing, so they could "go over this to make sure it sticks." In Plaintiff's opinion, the untimeliness of the response to the Primary Loan Serving Application and the contents of Mr. Lewis' email exhibit the continuing pattern of discriminatory action taken against her because of her sex.

On April 14, 2005, Plaintiff received notice from the FSA that the $80,000 operating loan was in non-monetary default. Contained in the notice was a statement that Plaintiff had misused both loan funds and crop proceeds by using those funds to purchase equipment, pay real estate taxes, and make major

improvements on irrigation equipment. In a letter also dated April 14, 2005, the FSA acknowledged that Plaintiff had submitted an application for debt restructuring based on being a distressed farmer. Plaintiff also applied for disaster set-aside funds from the FSA.

Like her loan assistance and primary loan servicing requests, Plaintiff's request for disaster set-aside funds was denied by the FSA. In order to obtain loan servicing and disaster set-aside funds, a borrower must show that she has acted in "good faith." Borrowers are considered to have acted in good faith if they have demonstrated "honesty" and "sincerity" in complying with various FSA loan documents and conditions. It was determined that Plaintiff did not act in good faith because she did not comply with her loan documents and loan conditions. To Plaintiff, the delay by the FSA in acting on her debt servicing request[3] and the denial of the set-aside funds and loan servicing are part of the continuing pattern of discrimination against her. Plaintiff states that male farmers similarly situated were provided with funds and servicing while her requests were denied.

On September 14, 2005, the FSA rescinded its determination that Plaintiff was ineligible for primary loan servicing. The agency sent Plaintiff a set of notices regarding the availability of loan servicing, with instructions for Plaintiff to update her application. On November 18, 2005, Plaintiff submitted an updated application for

---

[3]The FSA later acknowledged that the request for loan servicing should have been handled in a more timely manner, but stated that the decision to deny the request likely would not have changed.

5

loan servicing, along with a request for a new operating loan in the amount of $120,000.

The FSA subsequently notified Plaintiff on two occasions that additional items were needed for her application. Plaintiff then filed a civil rights complaint against the local FSA officials who had been handling her case. Due to the complaint, Plaintiff's loan servicing and operating loan applications were transferred to an FSA office approximately 100 miles from her home.

Plaintiff's presence was requested at an office visit on March 9, 2006. Plaintiff's mother, who is Plaintiff's designated representative for FSA matters, asked FSA officials to hold the meeting at an office closer to Plaintiff's home. The FSA's State Executive Director denied the request and advised Plaintiff to be at the office visit on March 9, 2006. This meeting was rescheduled five times at Plaintiff's request.

In the meantime, the FSA notified Plaintiff that she had to provide eleven items no later than April 20, 2006 to update her loan servicing and operating loan applications. The requested items included copies of income tax returns, a written description of Plaintiff's farm training and experience, and various FSA forms. After Plaintiff failed to appear for her scheduled meeting on April 26, 2006, Plaintiff's mother asked the FSA for another appointment and additional time to submit the requested information. The FSA denied the request and sent Plaintiff a notice of intent to accelerate the $80,000 operating loan. The notice informed Plaintiff that

she was not eligible for primary loan servicing because she failed to appear for six consecutive office visits. Plaintiff's application for the $120,000 operating loan was also denied on this basis.

On May 12, 2006, Plaintiff appealed the loan servicing determination and the denial of her loan application to the NAD. Plaintiff's mother met with an FSA official on May 22, 2006 to discuss both applications. The FSA issued two letters in response, both dated June 7, 2006, one of which reiterated the previous determination that Plaintiff was not eligible for loan servicing. The second letter stated that the FSA had again denied the operating loan application, this time because Plaintiff did not provide the eleven items requested by FSA.

In a decision dated September 27, 2006, the NAD determined that the FSA erred in determining Plaintiff ineligible for primary loan servicing and in denying her operating loan application. According to the NAD, the lack of an office visit and incomplete application did not render Plaintiff ineligible for loan servicing or require the denial of her loan application. It also noted that the FSA did not timely act on Plaintiff's January 13, 2005 loan servicing application and did not give her the required time to submit the additional information needed to complete her applications.

Plaintiff next received two letters from the FSA, both dated November 22, 2006. In one letter, the FSA stated that as a result of the NAD's decision, it would continue to process Plaintiff's operating loan application. The FSA requested

additional information from Plaintiff in order to update and complete her loan application. In the other letter, Plaintiff was notified that her previous loan servicing package was rescinded. She was provided with a new loan servicing package and was instructed to complete the application and return it to the FSA.

On December 12, 2006, Plaintiff was notified by the FSA that her loan application was incomplete and that the FSA needed certain information before it could finish processing the application. The required information was listed. Plaintiff was warned that her application would be withdrawn if she failed to submit the information or contact the FSA office by December 22, 2006. While Plaintiff did submit certain items by the deadline, she did not provide all of the items, and her loan application was withdrawn by the FSA on January 9, 2007.

On that same day, Plaintiff was notified that her loan servicing application was incomplete, and was provided with a list of items needed for the FSA to process the application. Plaintiff apparently failed to respond to the FSA's request, and a notice of intent to accelerate the $80,000 operating loan was issued on January 31, 2007. Plaintiff was advised of her administrative and appellate rights, along with instructions on how to exercise them. Plaintiff did not appeal the FSA's decision.

Plaintiff contends that the FSA failed to implement the NAD's September 27, 2006 final determination within thirty days as required by 7 C.F.R. § 11.12, and improperly waited until November 22, 2006 to notify her about the loan servicing

programs. Plaintiff believes these actions are additional examples of how the USDA and its agencies discriminated against her because of her sex.

## III.   DISCUSSION

The Equal Credit Opportunity Act ("ECOA") is an anti-discrimination statute which creates a private right of action against a creditor, including the United States, who "discriminate[s] against any applicant, with respect to any aspect of a credit transaction...on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). The basis of Plaintiff's Complaint is that the USDA, through the FSA, discriminated against her because of her sex.

Defendant asserts two grounds upon which he believes this case should be dismissed: (1) the Court lacks subject matter jurisdiction; and (2) the Complaint fails to state a claim upon which relief can be granted. The Court will address both arguments.

### A.   Federal Rule of Civil Procedure 12(b)(1)

"Facial attacks" on a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction require the district court "to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1528-1529 (11th Cir.1999) (quotation and alteration omitted).

Defendant argues that this Court does not have subject matter jurisdiction over Plaintiff's Complaint because the Secretary of the USDA is entitled to sovereign

9

immunity on Plaintiff's claims. The dismissal of a lawsuit on sovereign immunity grounds is permitted under Rule 12(b)(1). *See* Bennett v. United States, 102 F.3d 486, 488 n. 1 (11th Cir.1996) (noting that a dismissal on sovereign immunity grounds should be under Rule 12(b)(1) because no subject matter jurisdiction exists).

"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C., 224 F.3d 1260, 1263 (11th Cir.2000) (citation omitted). This protection generally extends to the employees of those agencies sued in their official capacities. *See* Ishler v. Internal Revenue, 237 Fed.Appx. 394, 397 (11th Cir. March 13, 2007) (unpublished).

The ECOA contains a waiver of the United States' sovereign immunity. *See* Moore v. U.S. Dep't of Agric. on Behalf of Farmers Home Admin., 55 F.3d 991, 994 (5th Cir.1995) ("The plain language of the ECOA unequivocally expresses Congress' intentions: governmental entities are liable under the Act."); Ordille v. United States, 216 Fed.Appx. 160, 164 (3rd Cir. January 24, 2007) (unpublished). Defendant acknowledges that the ECOA allows for damage claims against "creditors," which would be the government or governmental subdivision or agency involved in the credit process, but takes the position that the ECOA contains no waiver of the Secretary's sovereign immunity.

Lawsuits against federal government officials in their official capacities are treated as suits against the federal government itself.  Brandon v. Holt, 469 U.S. 464, 471-472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).  "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."  Id.  Thus, Plaintiff's suit is essentially against the United States through its agency, the USDA.  As Congress has waived sovereign immunity for the ECOA, Defendant can be sued in his official capacity.  *Contra* Ivey v. Paulson, 222 Fed.Appx. 815, 820 (11th Cir. January 29, 2007) (unpublished) (holding that the plaintiff could not sue the Secretary of the Department of the Treasury because the government had not waived its sovereign immunity to be sued).  Defendant's Motion to Dismiss on sovereign immunity grounds is denied.

### B.     Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), all facts set forth in the complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto."  GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir.1993).  "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed."  James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir.2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)) (quotation marks omitted).

Complaints under the ECOA must be brought within two years of the alleged discriminatory event.[4] 15 U.S.C. § 1691e(f). Defendant contends that Plaintiff's Complaint should be dismissed because the statute of limitations has run. According to Defendant, dismissal for failure to state a claim upon which relief can be granted is appropriate in this case because none of the alleged ECOA violations occurred within the two-year period prior to the filing of the Complaint.

A statute of limitations bar is an affirmative defense. A plaintiff is not required to negate this affirmative defense in her complaint. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir.2004). Therefore, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." Id. (citations omitted).

It is far from clear from the face of the Complaint that Plaintiff's entire action is time-barred. While Plaintiff makes allegations of discriminatory acts in 2004 and 2005, which would be outside the statute of limitations period, she also identifies at least two alleged violations occurring within the two-year period between September 25, 2006 and September 25, 2008, the date she filed her Complaint. Plaintiff contends that the FSA's failure to take any action on the NAD's September 27, 2006 decision until November 22, 2006 violated 7 C.F.R. § 11.12, which states that when

---

[4]"Any action under this section may be brought in the appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction. No such action shall be brought later than two years from the date of the occurrence of the violation...." 15 U.S.C. § 1691e(f).

12

a case is returned to an agency by the NAD, "the head of the agency shall implement the final determination not later than 30 days after the effective date of the notice of the final determination."  She believes this violation and the FSA's failure to notify her about her loan servicing options until November 22, 2006 were discriminatory acts based on her sex.  These claims would unquestionably be timely.  Therefore, Plaintiff should be allowed to proceed on the claims of discrimination that occurred after September 25, 2006.  Defendant is, however, entitled to a Rule 12(b)(6) dismissal of any claims prior to September 25, 2006.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  Any claims of discrimination occurring prior to September 25, 2006 are dismissed as time-barred.  15 U.S.C. § 1691e(f).  Plaintiff's claims of discrimination occurring after September 25, 2006 are allowed to proceed.

**SO ORDERED**, this the 14th day of May, 2009.

>*s/  Hugh Lawson*
>**HUGH LAWSON, SENIOR JUDGE**

mbh